## AETNA CASUALTY & SURETY CO. v. CORPUS CHRISTI NAT. BANK.

### No. 11445.

Court of Civil Appeals of Texas. San Antonio.

Oct. 25, 1944.

Rehearing Denied Nov. 22, 1944.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, for appellant.

Kleberg, Eckhardt, Mobley & Roberts and Jerry D'Unger, all of Corpus Christi, for appellee.

MURRAY, Justice.

We accept appellant's statement of the nature and result of the case, which is as follows:

"This is an action by appellant, The Aetna Casualty and Surety Company, under its right of subrogation to, and as assignee of, the rights of the State National Bank of Corpus Christi against the appellee, Corpus Christi National Bank, to recover $3,000.00 paid by the State National Bank to the Corpus Christi National Bank upon a check drawn on the State National Bank by one of its depositors and altered in that amount prior to presentation to either of the banks. The nature of the action is for money paid under a mistake of fact.

"The trial court, upon undisputed facts, most of which were stipulated, rendered judgment for the defendant, and The Aetna Casualty and Surety Company has perfected this appeal."

The facts are undisputed and are stated by appellant as follows:

"On September 7, 1939, one Marilee Clingan deposited a check for $3,100.00 in her account in the Corpus Christi National

Bank, said check having been drawn on the account of V. L. Rossi in the State National Bank of Corpus Christi. This check, after having been credited to the account of Marilee Clingan, was then transmitted by the Corpus Christi National Bank to the State National Bank for payment. The check was presented at the State National Bank on September 9, 1939, and on that same date Marilee Clingan appeared at the Corpus Christi National Bank for the purpose of withdrawing the balance of her account. At the time that Marilee Clingan appeared at the Corpus Christi National Bank for the purpose of withdrawing the balance of her account, the evidence shows, and the court found, that before paying over the funds to Marilee Clingan, inquiry was made of the State National Bank by R. M. Boerum of the Corpus Christi National Bank, and the said R. M. Boerum was advised by some one at the State National Bank that the check had been paid and charged to Rossi's account.

"On October 3, 1939, it developed, as shown by the affidavit of V. L. Rossi herein, and as found by the trial court, that said check was originally issued for $100.00, altered after V. L. Rossi had signed the same, but before it was deposited in the Corpus Christi National Bank, without Rossi's authority, to the sum of $3,100.00, and V. L. Rossi demanded payment of the State National Bank of the sum of $3,000.00 erroneously charged to his account. Subsequently, the appellant, The Aetna Casualty and Surety Company, as the surety upon a blanket forgery bond issued by it in favor of the State National Bank, paid the said sum of $3,000.00 to V. L. Rossi, and brought this action against the Corpus Christi National Bank to recover the sum of $3,000.00 alleging a mutual mistake of fact on the part of both banks as to the genuineness of the instrument.

"The appellee, Corpus Christi National Bank, answered by a general denial and a plea of estoppel, the latter being based upon the act of the State National Bank in advising the Corpus Christi National Bank that the check had been paid.

"This case was submitted to the trial court upon the oral admissions by both parties that neither the drawee bank, State National Bank, nor the appellee collecting bank, Corpus Christi National Bank, were negligent in the handling of the check in any manner whatsoever. * * * The check itself shows that it would have been impossible for either bank to have discovered the alteration.

"The trial court after rendering judgment for the appellee, upon request, filed his Findings of Fact and Conclusions of Law, the fact findings being as set forth in this statement."

Appellant contends that under the undisputed facts it was entitled to judgment as a matter of law. In this connection appellant submits two propositions of law, to-wit:

"First: Upon payment of a check, the amount of which has been altered, as distinguished from a check upon which the drawee's signature has been forged, the drawee bank is entitled to recover the moneys so paid from the collecting bank to which the payment was made, as for money paid under a mistake of fact.

"Second: The mere payment of an altered check does not estop, or otherwise bar, the drawee bank from recovering from the collecting bank."

These propositions are undoubtedly true as far as they go, but do not go far enough. They do not cover the further proposition to the effect that where the drawee bank has paid the raised check and thereby caused the collecting bank to pay over the proceeds of the check to its depositor, such drawee bank is estopped to recover from the collecting bank.

These propositions are undoubtedly correct, unless the drawee bank by making the payment has caused the collecting bank to change its position for the worse. Under such circumstances the drawee bank cannot recover for the loss which its own act has caused.

The drawee bank, by paying the raised check and by so notifying the collecting bank, caused such bank to change its position for the worse and thereby caused the loss. At the time the collecting bank called up the drawee bank and asked whether or not the check had been paid, it had not at that time paid the proceeds of the raised check to its depositor. The fact that the collecting bank had given a bookkeeping credit for such check is immaterial because up until the proceeds of the check had actually been paid to the depositor (no rights of innocent third persons having intervened), the amount of the check could have been charged back to the account of the depositor and there would have been no loss. It is therefore apparent

that the loss was caused by the drawee bank paying the raised check. Under such circumstances it would be inequitable to permit the drawee bank, or any one standing in its position, to recover from the innocent collecting bank. The collecting bank reaped no benefit nor gained any advantage from the transaction. It is true that this suit is one for money paid and received, which is in form a legal action but is one which always addresses itself to the equitable consideration of the court.

We have found no Texas case directly in point. We have been cited to the cases of City National Bank of Houston v. First National Bank of Houston, 45 Tex. 203; Marlin National Bank v. Reed, Tex. Civ.App., 164 S.W.2d 260, but we do not consider these cases as being in point. The case which we feel sheds more light on the questions raised here than any other case is Crocker-Woolworth National Bank v. Nevada Bank, 139 Cal. 564, 73 P. 456, 458, 63 L.R.A. 245, 96 Am.St.Rep. 169. We quote the following from that opinion:

"The governing principle is this: that where equally innocent persons have dealt with one another under a mistake the burden of loss resulting from the common error ordinarily will be left where the parties themselves have placed it, and so recovery can only be had where in equity and good conscience the defendant should be called upon to refund. Holly v. Missionary Society, 180 U.S. 284, 21 S.Ct. 395, 45 L.Ed. 531. * * *

"Again, where, as in the present case, the forgery consists in changing the body of the check so as to raise the amount, as the drawee is not charged with knowledge of the handwriting of whomsoever may have prepared the body of the check, he may, even if negligent, recover upon the ground of mistake, *provided that his recovery would not pass the burden of loss over to an innocent payee, who had changed his condition upon faith of the payment*. That is to say, where the drawee has done any act to give currency to the paper, as by acceptance, etc., on faith of which the holder has taken, or the condition of the holder will be altered for the worse in any way, as where he received the check for collection and paid over the proceeds to the principal before he received notice of the alteration, then the party paying is precluded from recovering by the ordinary rules of estoppel—otherwise not." (Emphasis ours.)

An exception to the above rules is when the instrument presented for payment bears the general endorsement of the collecting bank, a general endorsement warrants the genuineness of the instrument.

█ The trial court properly held that: "The Aetna Casualty and Surety Company is not entitled to recover by reason of the endorsement which the Corpus Christi National Bank placed upon the check, 'Previous Endorsements Guaranteed,' since such an endorsement made in the course of banking transactions is merely the passport of the check through regular banking channels, and is so understood by the banking business."

In this connection, we again quote from the Crocker-Woolworth case, supra:

" * * * Common knowledge and common experience inform us that in the case of local checks such as this it is the uniform, if not the well-nigh universal, practice for banks to take them from their depositors and clients for collection only. They do not 'buy' them. They take them as agents. And, if this common knowledge needed re-enforcement, it is abundantly furnished by the evidence of the officers of the banks testifying in this case to the effect that at least, if it was not the uniform practice never to buy local checks, it was certainly the general practice to take them only for purposes of collection. Therefore, so far as this check so deposited and so presented to plaintiff is concerned, the knowledge that it conveyed was at least the knowledge that in this transaction, as in thousands of others, the Nevada Bank was probably the collecting agent merely. It will not be assumed, against the uniform practice of banks in this regard, and in the absence of any evidence at all upon the subject, that the plaintiff here, and in this sole and peculiar instance, put reliance upon the supposed ownership of the check by defendant. If, indeed, it did have such belief, then the complete answer is that the restricted indorsement did not justify nor warrant it in that belief, nor make the defendant liable because such belief was entertained."

█ Under the facts and circumstances of the case at bar we cannot say that in equity and good conscience the collecting bank should be called upon to refund to the drawee bank or its assignee, the Aetna Casualty and Surety Company.

The judgment is affirmed.